**In re John R. CANNEY, III, Chapter 7 Trustee for the Estate of Maxwell Frazer, Trustee,**

**John R. Canney, III, Chapter 7 Trustee for the Estate of Maxwell Frazer, Appellant,**

**United States Trustee, Trustee,**

Town of Weathersfield, Movant,

v.

Merchants Bank, Appellee.

Docket No. 00–5071.

United States Court of Appeals,
Second Circuit.

Argued June 22, 2001.

Decided March 7, 2002.

Jess Thomas Schwidde, Gleb Glinka, Glinka & Schwidde, Rutland, VT, for Appellant.

Norman Williams, Gravel & Shea, Burlington, VT, for Appellee.

Before: CABRANES, F.I. PARKER, SOTOMAYOR, Circuit Judges.

F.I. PARKER, Circuit Judge.

Appellant, John R. Canney, III, Chapter 7 Trustee for the Estate of Maxwell Frazer ("Trustee"), appeals from an opinion and order of the United States District Court for the District of Vermont (William K. Sessions, *Judge* ), dated August 8, 2000. The district court reversed the decision of the United States Bankruptcy Court for the District of Vermont (Robert L. Krechevsky, *Bankruptcy Judge* ),[1] dated August 30, 1999, which denied Appellee Merchants Bank's request for relief from an automatic stay.

This appeal concerns the intersection of federal bankruptcy law with Vermont strict foreclosure law. After obtaining several loans from Merchants Bank and securing the loans by mortgages on his property and assignment and pledge of the stock in his restaurant, Maxwell Frazer d/b/a Max's Country Village Store and Mr. G's Restaurant ("Frazer") defaulted on the loans. Merchants Bank obtained a foreclosure judgment from state court that specified the amounts due and a deadline for Frazer to redeem, *i.e.*, cure his default. Days prior to the deadline, Frazer filed for bankruptcy protection.

The issues raised by this appeal are: (1) whether the automatic stay provisions of 11 U.S.C. § 362(a)[2] or the time limitations of 11 U.S.C. § 108(b)[3] apply when a mortgagor files for bankruptcy during the equity of redemption period following entry of judgment in a Vermont strict foreclosure action; and (2) if the automatic stay provisions do not toll the equity of redemption

---

1. The Honorable Robert L. Krechevsky is a bankruptcy judge of the United States Bankruptcy Court for the District of Connecticut and was sitting by designation.

2. Section 362(a) provides in pertinent part:

 (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970 operates as a stay, applicable to all entities, of—

 (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

 (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

 (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

 (4) any act to create, perfect, or enforce any lien against property of the estate;

 (5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title....

 11 U.S.C. § 362(a).

3. Section 108(b) provides in pertinent part:

 (b) Except as provided in subsection (a) of this section, if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor ... may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only file, cure, or perform, as the case may be, before the later of—

 (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

 (2) 60 days after the order for relief.

 11 U.S.C. § 108(b).

period, whether those provisions toll either the recording of the certificate of non-redemption or the issuance of the writ of possession. We follow our sister Circuits and hold that § 108(b), not § 362(a), governs the tolling of a period of equitable redemption. Because the redemption period lapsed without redemption, we find that neither Frazer nor the Trustee has a legally cognizable right or interest in the property that justifies encumbrance by the federal bankruptcy laws. Finally, we hold that neither the recording of the certificate of non-redemption nor the issuance of the writ of possession is stayed by § 362(a). Accordingly, we affirm the judgment of the district court.

## I. BACKGROUND

The facts in this case are undisputed. Between May 1992 and March 1996, Merchants Bank provided several loans to Frazer.[4] Merchants Bank secured the loans by either mortgages on Frazer's real property located in the Town of Weathersfield, Vermont (the "Property"), or assignment and pledge of the stock in his restaurant. Frazer defaulted on the loans, and in January 1998, Merchants Bank sought foreclosure.

In June 1998, Frazer entered into a Stipulation and Judgment and Shortened Redemption Period, which was so ordered by the state court on July 14, 1998. The parties agreed that the equity of redemption period would expire on September 15, 1998.

On September 11, 1998, a Consolidated Judgment Order and Decree of Foreclosure ("Foreclosure Judgment") was issued by the Windsor Superior Court. *See Merchants Bank v. Frazer*, Windsor Super. Ct.

Docket No. 24–1–98Wrcv (Sept. 11, 1998). The Foreclosure Judgment forever barred Frazer from equity redemption unless Merchants Bank was paid the full amount due on the mortgage on or before September 18, 1998.

On September 14, 1998, Frazer filed a Chapter 13 bankruptcy petition. That petition was dismissed, however, for lack of jurisdiction on December 15, 1998. The next day, Frazer filed a Chapter 11 bankruptcy petition.

On June 23, 1999, Merchants Bank moved for relief from the automatic stay, arguing that the equity of redemption period is not stayed by 11 U.S.C. § 362, on the ground that the timing provisions of 11 U.S.C. § 108(b) take precedence over § 362 tolling. Merchants Bank relied on decisions from the United States Courts of Appeals for the Sixth, Seventh, and Eighth Circuits.

The bankruptcy court denied Merchants Bank's motion on August 30, 1999. *See In re Frazer*, 238 B.R. 262 (Bankr.D.Vt.1999). The bankruptcy court considered it significant that all but one of the Circuit court cases relied on by Merchants Bank involved the statutory right of redemption following a foreclosure by sale. *See id.* at 264. The bankruptcy court found dispositive the "distinction between a mortgagor's equity of redemption, which is a property interest that exists *prior* to the passing of title, and a right, available only in those states where statutes so provide, to repurchase the already foreclosed property from a buyer following a foreclosure sale." *Id.* (emphasis added). Relying on the prior decisions of bankruptcy courts in Vermont and Connecticut,[5] the two states in which

---

**4.** First National gave the first loan and on July 4, 1993, transferred the note and mortgage to Merchants Bank. *See Merchants Bank v. Frazer*, 253 B.R. 513, 515 n. 1 (D.Vt.2000).

**5.** *E.g., In re Shea Realty, Inc.*, 21 B.R. 790, 792 (Bankr.D.Vt.1982); *In re L.H. & A. Realty Co.*, 57 B.R. 265, 268 (Bankr.D.Vt.1986); *In*

strict foreclosure (rather than foreclosure by sale) is the usual method of foreclosure, rather than the decisions of the Sixth, Seventh, and Eighth Circuits, the bankruptcy court held that the equity of redemption period is stayed by 11 U.S.C. § 362 and denied Merchants Bank's motion. *Id.* at 264–65. Merchants Bank appealed.

On May 17, 2000, Frazer's Chapter 11 case was converted to a Chapter 7 case, and John R. Canney, III, Esq. was appointed trustee of the estate.

On August 8, 2000, the district court issued its opinion and order reversing the bankruptcy court. *See Merchants Bank,* 253 B.R. 513. The district court found persuasive the case law in other circuits analyzing the issue of how § 108(b) and § 362(a) interrelate and concluding that the timing provisions of § 108(b) take precedence over § 362(a) tolling where no affirmative act triggering the indefinite stay provision of § 362 may be found. *See id.* at 516–17. The district court noted that the Vermont cases that take a contrary approach rely primarily on the legislative history of § 362(a) without reference to 12 Vt. Stat. Ann. §§ 4529–4530 and determined that the issue could be "resolved by the procedural requirements of Vermont law." *Id.* at 517. The district court recognized that although "the passage of full title, both legal and equitable, to the mortgagee, not under a decree of Judicial sale, passes after the recording of the decree in foreclosure in the appropriate city or town clerk's office and the expiration of the redemption date(s) specified in the decree of foreclosure," *id.* at 517–18 (quoting *L.H. & A.,* 57 B.R. at 267), "this affirmative act is only required on the part of the foreclosing mortgag[ee] prior to obtaining title

when there are 'subsequent purchasers, mortgag[ees] or attaching creditors.'" *Id.* at 518 (quoting 12 Vt. Stat. Ann. § 4530). The court therefore concluded that, with respect to the mortgagor, title passes without reference to 12 Vt. Stat. Ann. § 4529, and thus "no additional act is required in the state of Vermont which would trigger the indefinite stay of 362(a)." *Id.* at 518.

Additionally, the court reasoned that, while all debtors are generally protected under the indefinite stay of § 362(a), "that protection is limited for those who had pre-existing agreements to pay by a particular date under § 108(b)." *Id.* at 519. Consequently, the district court followed the direction of the Sixth, Seventh, and Eighth Circuits and held that the indefinite stay provided for in § 362(a) is superseded by the timing provisions of § 108(b). *Id.* This appeal ensued.

## II. DISCUSSION

This appeal requires us to analyze the intersection of federal bankruptcy law with Vermont strict foreclosure law in order to address the following questions: (1) whether the automatic stay provisions of 11 U.S.C. § 362(a) or the time limitations of 11 U.S.C. § 108(b) apply when a mortgagor files for bankruptcy during the equity of redemption period following entry of judgment in a Vermont strict foreclosure action; and (2) if the automatic stay provisions do not toll the equity of redemption period, whether those provisions toll either the recording of the certificate of nonredemption or the issuance of the writ of possession.

### A. *Vermont Strict Foreclosure Law*

Before wading into federal bankruptcy law, a brief explanation of the Vermont strict foreclosure law is warranted.[6]

re *Amant,* 41 B.R. 156, 163 (Bankr.D.Conn. 1984).

6. "Strict foreclosure does not involve a foreclosure sale. Upon the borrower's default,

" 'Strict foreclosure is the normal method of foreclosure only in Connecticut and Vermont.' " *In re Frazer,* 238 B.R. 262, 263 n. 3 (Bankr.D.Vt.1999) (quoting Baxter Dunaway, The Law of Distressed Real Estate: Foreclosure, Workouts, Procedures § 12.16 (1999)), *rev'd,* 253 B.R. 513 (D.Vt. 2000). In Vermont, a mortgage conveys legal title to the mortgagee at the time the mortgage is granted. *See Mitchell v. Aldrich,* 122 Vt. 19, 163 A.2d 833, 837–38 (1960); *Pierce v. Brown,* 24 Vt. 165 (1852). "[O]nce the condition of a mortgage is broken, 'the mortgagee becomes at law the absolute owner of the property and is entitled to immediate possession. . . .' " *Rassman v. Am. Fid. Co.,* 142 Vt. 623, 460 A.2d 461, 463 (1983) (*quoting Kelly v. Clement Nat'l Bank,* 111 Vt. 65, 10 A.2d 201, 202 (1940)); *see also Town of Bristol v. United States,* 315 F.Supp. 908, 910–11 (D.Vt. 1970) (same, citing cases). A mortgagee may assert its right to possession by peaceable entry,[7] by eviction,[8] or by seeking a foreclosure judgment in county court.[9]

■■■ Through a foreclosure judgment, a mortgagee formally takes "possession" of the property. A foreclosure judgment

vests full legal and equitable title to the property with the mortgagee, subject only to the mortgagor's "equity of redemption," which is a contingent equitable interest in the property, and limited rights to possession, rents, and profits of the property during the period of redemption. *See Stowe Ctr., Inc. v. Burlington Sav. Bank,* 141 Vt. 634, 451 A.2d 1114, 1115 (1982) ("Under Vermont law if no one redeems foreclosed property within the prescribed period, the foreclosing mortgagee, pursuant to the Vermont strict foreclosure procedure, 12 V.S.A. chapter 163, subchapter 6, obtains full and complete title and has the right to sell the property and retain the surplus, if any."); *Hooper v. Wilson,* 12 Vt. 695, 697–98 (1839) ("[I]t is universally allowed that [the mortgagor] is tenant, and therefore no trespasser, until the mortgagee has asserted his right of possession, and then the mortgagor has *only* the equity of redemption.")(emphasis added);[10] *Dieffenbach v. Attorney Gen. of Vt.,* 604 F.2d 187, 192 n. 8 (2d Cir.1979) ("[U]ntil a foreclosure decree, . . . the mortgagor was the equitable owner of the fee, with legal title vested in the mortgagee only for the protection of his security interest.");[11]

the court will normally set a time period in which the borrower may pay off or redeem the mortgage debt. If the borrower fails to do so in the allotted time, the lender is given an immediate right to possession of the property." Baxter Dunaway, The Law of Distressed Real Estate: Foreclosure, Workouts, Procedures § 12.16 (1999), *quoted in Frazer,* 238 B.R. at 263 n. 3.

7. *See, e.g., Fuller v. Eddy,* 49 Vt. 11, 12 (1876).

8. *See, e.g., Hill v. Hill,* 59 Vt. 125, 7 A. 468 (1887); *Hooper v. Wilson,* 12 Vt. 695 (1839).

9. *See* 12 Vt. Stat. Ann. §§ 4523(a), 4526, 4528.

10. In *Hooper,* the court suggested that upon default, the mortgagee has the right to take possession and that (1) if the mortgagee exercises that right before the equity of redemp-

tion period lapses (*e.g.,* through eviction proceedings), the mortgagor would be entitled to collect any surplus, *i.e.,* the "rents and profits[ ] upon the mortgage," from the mortgagee, but (2) if the mortgagee exercises that right after the equity of redemption period lapses, the mortgagee is entitled to the surplus. *Hooper,* 12 Vt. at 698. *See also Hill v. Hill,* 59 Vt. 125, 7 A. 468 (1887) (same). Thus, while the mortgagee holds legal and equitable title during the redemption period, the mortgagor retains the equity of redemption and limited rights to possession, rents, and profits of the property during that period.

11. We disagree with the district court's suggestion that title does not pass until a certificate of non-redemption is recorded. *Merchants Bank,* 253 B.R. at 517–18 (relying on 12 Vt. Stat. Ann. § 4530). This procedural

*see also* 12 Vᴛ. Sᴛᴀᴛ. Aɴɴ. § 4528; *c.f. Aldrich v. Lincoln Land Corp.*, 130 Vt. 372, 294 A.2d 853, 855–57 (1972) (discussing right of redemption and emphasizing that "responsibility for complying with the conditions of redemption are on the one seeking the exercise of the right"). Redemption (or satisfaction of the foreclosure judgment) is the operative contingency: Curing the default within the time period specified in the foreclosure judgment vests equitable title with the mortgagor; failure to do so, however, extinguishes the contingent interest. *See, e.g., Stowe Center*, 451 A.2d at 1115; *Dieffenbach*, 604 F.2d at 192, 192 n. 8; *Aldrich*, 130 Vt. at 376–78, 294 A.2d 853.

██ In this case, Merchants Bank effectively asserted its rights, including its right of possession, and obtained a Foreclosure Judgment in its favor in the Windsor Superior Court on September 11, 1998. Accordingly, as of that date, Frazer's only interest in the property was the equity of redemption. *See, e.g., Hooper*, 12 Vt. at 698; *Dieffenbach*, 604 F.2d at 192 n. 8. As the decree makes clear, the equity of redemption is irreversibly "foreclosed and forever barred" if the mortgagor fails to redeem within the period set forth in the decree.

 In analyzing whether §§ 362(a) or 108(b) apply in this case, we must keep in mind that "[p]roperty interests are created and defined by state law." *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). Be-

cause Frazer sought bankruptcy protection after the foreclosure judgment had been filed but during the redemption period specified in that judgment, his equity of redemption, a contingent equitable interest in the property subject to extinguishment absent redemption within the allotted time, became "property of the estate" within the meaning of federal bankruptcy laws. *See* 11 U.S.C. § 541(a).[12]

### B. *Tolling of the Period of Redemption*

██ We begin our analysis of federal bankruptcy law with the statutory text. Section 362(a) provides, in pertinent part:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970 operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

---

requirement allows the mortgagee to perfect title with respect to "subsequent purchasers, mortgag[ees] or attaching creditors" but has no effect whatsoever on the mortgagor. 12 Vᴛ Sᴛᴀᴛ. Aɴɴ § 4530. *See infra* section C.1.

**12.** Section 541 of the Bankruptcy Code defines "property of the estate" as follows:

(a) The commencement of a case under section 301, 302, or 303 of this title creates

an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

11 U.S.C. § 541(a)(1).

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title....

11 U.S.C. § 362(a). Section 108(b) provides, in pertinent part:

(b) Except as provided in subsection (a) of this section, if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor ... may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only file, cure, or perform, as the case may be, before the later of—

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

(2) 60 days after the order for relief.

11 U.S.C. § 108(b). The situation presented by this case seems to fall within the scope of both provisions. On one hand, the foreclosure judgment in favor of the mortgagee resulted from a pre-petition "proceeding against the debtor" and left the mortgagor with a right to redeem within a specified timeframe. This right is "property of the estate" within the meaning of § 541, suggesting that § 362(a) may apply. On the other hand, the foreclosure judgment is "an order entered in a nonbankruptcy proceeding [that] fixes a period within which the debtor ... may ... cure a default," suggesting that § 108(b) may apply.

Neither the statutory text nor the legislative history of § 362(a)[13] and § 108(b)[14] directly addresses how these provisions relate to one another. Nonetheless, Vermont bankruptcy courts have consistently held that the automatic stay provisions of 11 U.S.C. § 362(a) toll the duration of a debtor's equity of redemption period. *See In re Shea Realty, Inc.*, 21 B.R. 790, 793 (Bankr.D.Vt.1982); *In re L.H. & A. Realty Co.*, 57 B.R. 265, 268 (Bankr.D.Vt.1986).

In contrast, three Circuit courts have considered the interrelation between the provisions at issue here and determined that the timing provisions of § 108(b) take precedence over § 362(a) tolling. *See In re Tynan*, 773 F.2d 177 (7th Cir.1985); *In re Glenn*, 760 F.2d 1428 (6th Cir.1985); *Johnson v. First Nat'l Bank*, 719 F.2d 270 (8th Cir.1983); *see also In re Maanum*, 828 F.2d 459, 460 (8th Cir.1987) ("[R]egardless of the type of property interest affected, ' § 362(a) cannot be read to stay the mere running of a statutory time period.'.... Section 108(b) and section 362(a) are mutually exclusive; anything temporarily stayed under the specific language of section 108(b) is not indefinitely stayed by the more general language of section 362(a).") (quoting *Johnson*, 719 F.2d at 276); *c.f. Justice v. Valley Nat'l Bank*, 849 F.2d 1078, 1082 (8th Cir.1988) (applying *Johnson* rationale and holding that § 108(b) trumps § 1222(b)(2)). Following the reasoning of *Johnson* and *Maanum*, the Eighth Circuit determined that

---

13. *See* 11 U.S.C. § 362(a) and H.R. Rept. No. 95–595, at 340 (1978), reprinted in 1978 U.S.C.C.A.N. 5963, 6296–97.

14. *See* 11 U.S.C. § 108(b) and H.R. Rept. No. 95–595, at 318 (1978), reprinted in 1978 U.S.C.C.A.N. 5963, 6275.

§ 108(b), rather than § 362(a), governed in a strict foreclosure proceeding, where a South Dakota state court had entered a foreclosure judgment declaring that the Carvers had defaulted on a contract for deed they had entered into pertaining to certain real estate in South Dakota and specifying the conditions for redemption. *See In re Carver*, 828 F.2d 463, 464 (8th Cir.1987).

The seminal case on the applicability of § 362(a) and § 108(b) to a statutory redemption period following a mortgage foreclosure was *Bank of Commonwealth v. Bevan*, 13 B.R. 989 (E.D.Mich.1981).[15] In that case, the mortgagee and purchaser appealed an order of the bankruptcy court staying the statutory redemption period following a foreclosure sale of the debtor's residential property. *Id.* at 990. The district court noted that, "[w]hile the nature and extent of the debtor's interest in real property is determined by application of state law, the Bankruptcy Code defines those interests in property which become 'property of the estate' and hence within the jurisdiction of the bankruptcy court." *Id.* at 990–91 (citing 4 Collier on Bankruptcy ¶ 541.07(1) (15th ed.1980)).[16] Accordingly, the *Bevan* court concluded that the "right of redemption created under state law generally passes into the estate of the debtor if the period of redemption has not expired at the time the petition is filed." *Id.* at 991 (citing 4 Collier on Bankruptcy, ¶ 541.07(3) (15th ed.1980)). We agree.

The *Bevan* court concluded that "[u]nder the language of § 362(a), an automatic stay applies to 'acts,' 'proceedings' and their 'continuation,' and 'enforcement' of judgments against the debtor or property of the estate, and does not effect [sic] the running of specific time periods unlike § 108 which speaks explicitly to that issue." *Id.* at 993. The *Bevan* Court further reasoned that:

> An interpretation of § 362(a) as an indefinite stay of the statutory period of redemption would render § 108(b) superfluous. If § 362(a) automatically stays the running of the statutory right to redeem until the stay is lifted pursuant to § 362(c) or (d), the pertinent time allotments of § 108(b) are completely extraneous as statutory time periods designed to control the trustee's activity. Moreover, if § 362(a) is interpreted to provide for the automatic stay of time periods for an indefinite amount of time, then subsections (a) and (b) of § 108, which define minimum and maximum time periods for the trustee to act, directly conflict with § 362(a).

*Id.* at 994. The *Bevan* court noted that although § 362 would give the debtor greater protection, "where one section of the Bankruptcy Code explicitly governs an issue, another section should not be interpreted to cause an irreconcilable conflict," and thus held that § 108 controls the period of time a trustee has to redeem the debtor's property. *See id.*

We agree with the analysis in *Bevan* and thus join our sister Circuits in holding that § 108(b), not § 362(a), governs the tolling of a period of equitable redemption. The automatic stay prevents only certain affirmative acts taken by a creditor, and the running of time is not one of those acts. Redemption itself may be an affirmative act, but it is one that the mortgagor or

---

**15.** The Sixth and Eighth Circuits explicitly relied on the reasoning of *Bevan* in *Glenn* and *Johnson*. The Seventh Circuit indirectly relied on *Bevan* as well. In *Tynan*, the Seventh Circuit relied on the Eighth Circuit's decision in *Johnson*, which in turn discussed and re- lied on *Bevan*. *See Tynan*, 773 F.2d at 179; *Johnson*, 719 F.2d at 278 & n. 12.

**16.** *See* 11 U.S.C. § 541(a), quoted *supra* note 12.

Trustee must take to protect the equity of redemption.

Therefore, we hold that the period of equitable redemption was not stayed when Frazer filed a Chapter 13 bankruptcy petition on September 14, 1998, although it was extended by section 108(b) by 60 days after filing of the petition, *i.e.,* until November 13, 1998. Consequently, the equity of redemption was foreclosed when the extended period lapsed without redemption by Frazer or the Trustee. Under Vermont strict foreclosure law, the equity of redemption extinguished completely; full title, both legal and equitable, vested automatically with the mortgagee. *See supra* II.A. Thus, having failed to redeem during the period of equitable redemption, neither the mortgagor nor the Trustee has a legally cognizable right or interest in the property that justifies encumbrance by federal bankruptcy law.

## C. *Other Local Procedures*

Appellant argues that even if the period of equitable redemption is not stayed, § 362 stays local procedures that a mortgagee must invoke to perfect its interest in the property (i.e., record a certificate of non-redemption) and to enter the property and obtain possession (i.e., execution of a writ of possession). We disagree.

### 1. *Recording the Certificate of Non– Redemption*

Under Vermont law, a mortgagee must record a certificate of non-redemption to perfect its interest against "subsequent purchasers, mortgagees or attaching creditors." *See* 12 Vt. Stat. Ann. §§ 4529, 4530; *see also Merchants Bank,* 253 B.R. at 518. A mortgagee's ability to record a certificate of non-redemption is contingent upon the mortgagor's failure to redeem within the allotted time. *See* 12

Vt. Stat. Ann. § 4529. Once the redemption period lapses, a mortgagee has 30 days to record a certificate of non-redemption. *See id.* If a mortgagee does not do so, "subsequent purchasers, mortgagees or attaching creditors" may redeem the property as if the "time of redemption had not expired." 12 Vt. Stat. Ann. §§ 4529, 4530. It is quite clear that under Vermont law, the act of recording a certificate of non-redemption in no way affects the mortgagor, whose equity of redemption extinguishes automatically when the redemption period lapses. Recording simply perfects title against "subsequent purchasers, mortgagees or attaching creditors." *See id.* § 4530 ("Such foreclosure shall not transfer the title to such lands *as against subsequent purchasers, mortgagees or attaching creditors,*" unless the certificate is recorded on time) (emphasis added).

Appellant argues that filing the certificate of non-redemption affects its rights as "a subsequent attaching creditor." For the reasons discussed below, we disagree both with Appellant's premise (that it qualifies as "a subsequent attaching creditor") and its conclusion (that such status would entitle it to stay the filing of the certificate of non-redemption). Appellant contends that pursuant to federal bankruptcy law (1) a debtor-in-possession stands in the shoes of a trustee, *see* 11 U.S.C. § 1107(a);(2) a trustee may, *inter alia,* stand in the shoes of a creditor that issued credit at the time the bankruptcy petition was filed, *see* 11 U.S.C. § 544(a)(1); and (3) appellant "obtain[ed], at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien . . . ." *Id.* While this argument seems to support appellant's claim that a debtor may be deemed a "subsequent attaching creditor"

by operation of § 544 of the bankruptcy code, the argument distorts the purpose of the "strong arm" powers under § 544. "The purpose of the 'strong arm clause' is to cut off unperfected security interests, secret liens and undisclosed prepetition claims against the debtor's property as of the commencement of the case." Collier on Bankruptcy ¶ 544.03 (15th ed. rev.2001). Given that Merchants Bank's mortgage is neither unperfected, secret, nor undisclosed, we find § 544(a)(1) inapplicable in this case.

Assuming *arguendo* that appellant is "a subsequent attaching creditor," we nonetheless conclude that appellant's argument that the filing of the certificate of non-redemption is stayed by § 362 fails for the following reasons. First, under Vermont law, which cabins the creditor rights that a trustee (and a debtor-in-possession standing in the shoes of a trustee) may exercise, the mortgagee has the right to perfect its interest vis-a-vis "subsequent purchasers, mortgagees or attaching creditors." 12 Vt. Stat. Ann. §§ 4529, 4530. A subsequent attaching creditor simply has no right to redeem *unless and until* a mortgagee fails to record the certificate on time. *Id.* Second, as discussed above, the mortgagee automatically perfects its interest vis-a-vis the mortgagor because strict foreclosure leaves the mortgagor without any right or interest in the property. Finally, to exercise "strong arm" powers under § 544, a trustee must file an adversary proceeding, *see* Fed. R. Bankr.P. 7001 *et seq.*, and it does not appear based on the record before us that any such proceeding was initiated.

Therefore, we hold that the act of recording the certificate of non-redemption is not barred by § 362.[17]

### 2. The Writit of Possession

■ Under Vermont law, when a mortgagor fails to redeem within the allotted time and full title vests with the mortgagee, the mortgagee is entitled as of right to obtain a writ of possession from the clerk of the court in order to secure the assistance of the sheriff in removing any occupants from the property. *See Vermont Tenants, Inc. v. Vermont Hous. Fin. Agency*, 170 Vt. 77, 742 A.2d 745, 748 (1999) ("Under § 4528, the mortgagee need not bring a separate ejectment action to evict the tenant. The clerk can issue a writ of possession based on the foreclosure judgment and the failure to redeem, and the writ allows removal of any tenants, as well as the mortgagor."); *Dieffenbach v. Attorney Gen. of Vt.*, 604 F.2d 187, 194 (2d Cir.1979) ("[T]o obtain possession after the equity of redemption has expired the creditor must obtain from the clerk of the court a writ of possession which the sheriff must execute."). According to statute, a writ of possession obtained after strict foreclosure "shall have the same force and effect and be executed in the same manner as similar writs issued after judgment by a court of law in ejectment proceedings." 12 Vt. Stat. Ann. § 4528. Despite this language, there is (at least) one crucial distinction between such writs: In an ejectment proceeding, a debtor may redeem and thereby avoid ejectment if the clerk of court has not issued the writ of possession; issuance of the writ in an ejectment pro-

---

**17.** In reaching our conclusion, we need not, and therefore do not, decide whether filing the certificate of non-redemption constitutes a ministerial or affirmative act. *See In re Carver*, 828 F.2d at 463–64 (holding that certification of non-redemption by the clerk of the court, where the debtor failed to comply with a contract for deed within a redemption period, was not an affirmative act required to complete the running of the redemption period but was instead merely a ministerial act not stayed by § 362).

ceeding extinguishes the debtor's right to redeem.[18] By contrast, in a strict foreclosure proceeding, a debtor may not redeem after the period of redemption lapses, regardless of whether the clerk of court has issued the writ of possession; issuance of the writ has no effect whatsoever on the debtor's rights because, as discussed above, once the redemption period has lapsed, the debtor's equity of redemption extinguishes and the debtor has no legally cognizable right or interest in the property. *See supra* II.A. Accordingly, we hold that the issuance of the writ of possession after strict foreclosure is a ministerial act that is not tolled by the automatic stay provision.

We conclude that appellant's remaining arguments are without merit.

### III. CONCLUSION

We affirm the judgment of the district court.

---

**18.** *See Tucker v. Bushway,* 166 Vt. 592, 689 A.2d 426, 427 (1996) (the court discontinued an eviction action where the tenants tendered their rent after judgment but before the clerk issued the writ of possession); *Town of Corinth v. Locke,* 62 Vt. 411, 20 A. 809 (1890) (writ of possession put legal possession of premises in the orator); *see also In re Stoltz,* 197 F.3d 625, 631 (2d Cir.1999) (holding that under Vermont law, a tenant could assume lease after the court entered the judgment of possession because the writ of possession had not been entered); *Couture v. Burlington Hous. Auth. (In re Couture),* 225 B.R. 58, 62 (D.Vt.1998) (concluding that the Vermont Supreme Court would find that the Chapter 7 debtors retained possessory interest in their apartment until execution of the writ of possession).